In the Matter of the Estate of MAY SCULLIN DEGHEEST, Deceased, F. EUGENE THERRIEN, Appellant, v. ESTATE OF MAY SCULLIN DE-GHEEST, Deceased, MERCANTILE-COMMERCE BANK AND TRUST COMPANY, Respondent, No. 41674—232 S. W. (2d) 378.

Division Two, July 10, 1950.

Motion to Transfer to Banc or for Modification of Opinion or for Rehearing Overruled, September 11, 1950.

*Chase Morsey, Thomas R. Reyburn, Jones, Hocker, Gladney & Grand, Lon Hocker* and *Benjamin Roth* for appellant.

1004

*S. A. Mitchell, Harold I. Elbert* and *James M. Douglas* for respondent; *Thompson, Mitchell, Thompson & Douglas* of counsel.

TIPTON, J.—On an appeal from the probate court of the city of St. Louis, a verdict for $60,000.00 principal and $11,000.00 interest was returned in the circuit court of that city against the Mercantile-Commerce Bank and Trust Company, executor of the estate of May Scullin DeGheest, deceased. The trial court sustained the executor's motion for a new trial.

Mme. May Scullin DeGheest was a native of St. Louis but married a Frenchman and had lived in Paris, France, for many years. She died on March 23, 1945, over eighty-two years of age. The claimant, a Montreal lawyer, as assignee for collection of M. Laboureix, filed a claim against the estate of deceased founded upon five checks and letters signed by deceased and drawn on and addressed to the Mercantile-Commerce Bank and Trust Company. The name of the payee of each check was left blank and was accompanied by a letter written by the deceased to this bank. One of the letters dated October 24, 1944, said:

"Please be advised that I have drawn against my account a check in the amount of fifteen thousand dollars. This is part of the fifty thousand dollars to which my letter of same date refers.

"As said in the above mentioned letter it is my wish that you should keep in escrow that sum, this even in case of death; so that check is duly met on presentation."

The other three letters were similar. The amount of the four checks, verified by the accompanying letters, totaled $50,000.00. The fifth check and letter were dated December 15, 1944. The amount of the check was $10,000.00 and the contents of the letter were similar to the letters of October 24, 1944.

The checks in question, payable in U. S. currency, were negotiated by deceased for the purchase of francs shortly after the liberation of Paris by the allies. The checks and letters were delivered by deceased to John Freeman. He in turn handed over the checks and letters upon receipt of the francs to his uncle, the Count de Bearn, who delivered them to M. Laboureix who bought and paid in francs for this dollar exchange because he regarded American currency sounder than French currency.

 The trial court granted a new trial in this case for the reason that claimant had not secured a license to prosecute this action from the Alien Property Custodian as required by Executive Order 8389, and issued under authority of the "Trading with the Enemy Act." [Title 12, U. S. C. A. 95 (a)]. Claimant contends that no license is required. It is to be remembered that both the deceased and M. Laboureix were residents of France when that country was occupied by the Germans. France was one of the countries included in Executive Order 8389.

The claimant contends that since he does not seek to change the ownership of property but seeks only to have a claim allowed against an estate, no license is needed, and that if the claim is allowed payment should be made to a blocked account where the funds can be held to await the issuance of a license allowing transfer to the claimant.

In passing on claimant's contention we are bound to follow the Federal courts in interpreting Order 8389. Decisions of other state courts are of no aid to us in deciding the problem before us.

Section 1, paragraphs a and e of Executive Order 8389, prohibited the transfer of credits between banking institutions and the transfer of any evidence of indebtedness.

Certainly the checks and letters signed by the deceased are evidence of indebtedness and could not be transferred. "The language of Exec. Order 8389 prohibits the unlicensed transfer of an enemy alien's property. There is no cogent reason for excepting transfers by judicial process." Clark v. Propper, 169 Federal Reporter 2d, Series 324, l. c. 327. This case was affirmed by the Supreme Court of the United States and reported in 337 U. S. 472. In that case the American Society of Composers, Authors and Publishers (ASCAP) owed royalties to the Staatlish Genehmigte Gesellschaft der Autoren, Komponisten und Musikverleger (AKM), an Austrian association. In ruling the case the Supreme Court of the United States said:

"We hold that a transfer of this credit from a liability owed by ASCAP to AKM, to a liability owed by ASCAP to the receiver, would violate the prohibition against transfers of credit." Loc. cit. 482.

To the same effect is the recent case of Clark, Attorney General, v. Chase Nat. Bank, 82 Fed. Supp. 740.

Under the authority of the Federal case just cited, we hold that it was necessary for the claimant to first obtain a license from the Alien Property Custodian before this suit could be prosecuted.

■ The motion for a new trial was sustained August 1, 1949. On December 12, 1949, the claimant obtained a license from the Alien Property Custodian to prosecute this claim. It is his contention that we should take judicial notice of the license and reverse the order of the trial court with directions to enter a judgment in accordance with the verdict of the jury. There is no doubt of our right to take judicial notice of executive orders that have the force and effect of law. For instance, we take judicial notice of Executive Order 8389. But in this case the license was not issued until several months after the motion for rehearing was ruled. Therefore, the trial court could not have taken judicial notice of the issuance of the license and, ordinarily this court will not judicially notice what the trial court could not, and especially over the objection of the other party as was done in this case. State v. Wynne, 356 Mo. 1095, 204 S. W. 2d 927. We think the executor is entitled to have the trial court determine the authenticity of this reported license. It is brought to our attention only by a copy printed in the brief of claimant.

■ The reason assigned by the trial court for granting a new trial was that claimant had not secured a license to permit him to prosecute this claim, but he did not limit the new trial only to this issue as he had power to do under our new Civil Code. We are asked by claimant to limit the new trial to this issue only. The trial court has certain discretions in granting a new trial and we have often ruled we will sustain the action of the trial court in granting a new trial where we would not have reversed the judgment if the motion had been overruled by the trial court. The reason for this rule is that the trial judge participated in the trial and knew what took place, much of which cannot be preserved in any bill of exceptions or record. Arnold v. Alton R. Co., 343 Mo. 1049, 124 S. W. 2d 1092; Pearrow v. Thompson, 343 Mo. 490, 121 S. W. 2d 811. We do not think the trial court abused his discretion in this ruling.

■ The executor contends that the trial court erred in excluding certain regulations contained in the official Journal of the French Republic, a publication published and printed by the French Government, and for this further reason the granting of a new trial by the trial court should be sustained. This exhibit was excluded because the executor did not introduce an official copy of the provision of the French Code under which these regulations had been enacted.

The executor asserts that it was at least prima facie evidence of the regulation and, therefore, admissible under Section 1817, R. S. Mo., 1939. That section provides: "The printed volumes, purporting to contain the laws of a sister state or territory, shall be admitted as *prima facie* evidence of the statutes of such state or territory." This section deals only with a sister state or territory and, in our opinion, the purported printed regulations of the Republic of France do not come within its provision.

If this publication is admissible under S. B. 213 [Sec. 1814.6] Laws of 1949, we cannot convict the trial court of error because this act was not approved until after the new trial in this case was granted.

The executor contends that sustaining the motion for a new trial was proper because its motion for a directed verdict should have been sustained.

The checks and letters were filed in the probate court as a claim against the estate. The name of the payee of the checks had not been filled in as provided by Section ■■■ 3030, R. S. Mo., 1939, when filed in the probate court, which constituted the only pleading for claimant in this case.

It is contended by the executor that under Section 3030, supra, this action cannot be maintained because the name of the payee was not filled in as provided by that section and cites our case of Schooler v. Tilden, 71 Mo. 580, to support his contention. That case does say that if it had been necessary for the holder to sue on the note, the holder would have been obligated to fill in the blank. However, that action was not based on a note and therefore the statement is dictum.

But we consider this action is not on a negotiable instrument but, rather, upon an action for money had and received.

" 'The action for money had and received has always been one favored in the law, and the tendency is to widen its scope; it being a flexible form of action, levying tribute on equitable, as well as strictly legal, doctrines; so that, it has become axiomatic that the action lies where "the defendant has received or obtained possession of the money of the plaintiff, which, in equity and good conscience, he ought to pay over to the plaintiff." ' Clifford Banking Co. v. Donovan Commission Co., 195 Mo. 262, 94 S. W. 527, 535. See also Murry v. Central Bank, 226 Mo. App. 400, 40 S. W. 2d 721; Whitecotton v. Wilson, supra. In such an action it is held that it is not necessary to allege an express promise to pay, nor is a privity of contract required. The law implies the privity. Third Nat. Bank v. St. Charles Sav. Bank, 244 Mo. 554, 149 S. W. 495; Clifford Banking Co. v. Donovan Commission Co., supra; Whitecotton v. Wilson, supra; Richardson v. Moffit-West Drug Co., 92 Mo. App. 515, 69 S. W. 398; Hall v. Marston, 17 Mass. 575." Webster v. Sterling Finance Co., 351 Mo. 754, 173 S. W. 2d 928, l. c. 931.

There is evidence, if believed, that the deceased received francs from M. Laboureix in exchange for the checks payable in U. S. currency she had executed. The inference could be drawn from the evidence that it was necessary for deceased to obtain francs so she could live and that she wanted to pay her son's debts.

Executor also contends that there is not a sufficient assignment of these checks by M. Laboureix to Mr. Therrien but a mere delivery. The executor has not cited any authority to support this contention, nor has it shown wherein it would be prejudiced. We think the point is without merit. Kleinschmidt v. Globe-Democrat Publishing Company, 350 Mo. 250, 165 S. W. 2d 620.

Finding no prejudicial error in the record, the judgment is affirmed. All concur.