# Third District Court of Appeal

## State of Florida

Opinion filed March 2, 2022.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D20-1318
Lower Tribunal No. 17-9387
_____

**William Hernandez, et al.,**
Appellants,

vs.

**CGI Windows and Doors, Inc.,**
Appellee.

An appeal from the Circuit Court for Miami-Dade County, Alan Fine, Judge.

Carlton Fields, P.A., and Matthew J. Conigliaro, (Tampa); Taylor Espino Vega & Touron, PLLC, and Vanessa A. Van Cleaf, and Daniel R. Vega, for appellants.

Shumaker, Loop & Kendrick, LLP, and Duane A. Daiker, and Daniel J. DeLeo, and Andrew J. Oppenheim (Sarasota), for appellee.

Before SCALES, HENDON, and MILLER, JJ.

MILLER, J.

This is an appeal from a final judgment rendered in favor of appellee, CGI Windows and Doors, Inc., following a jury verdict in a negligence action brought by appellants, William and Rita Hernandez.  On appeal, appellants contend the trial court erred in allowing the admission of an unsworn pleading and a myriad of other evidence relating to dismissed and settled defendants.[1]  For the reasons articulated below, we reverse.

## BACKGROUND

Appellants purchased a multi-million dollar vacant, waterfront lot in Coral Gables, Florida, upon which they planned to build their dream home. Acting as their own general contractor through their company, Epic Construction, Inc., appellants constructed the residence and purchased $220,653.68 in custom windows and doors from a dealer-installer, the Companies of R&S, Inc.  Forty-two of the windows were manufactured by CGI.

R&S positioned the windows, while NCJD, a stucco contractor, performed stucco work in the adjacent areas.  After the windows were

---

[1] CGI contends that many of the objections to the challenged evidence were not preserved.  We disagree, in large part because the record establishes the trial court issued a definitive pretrial ruling, rendering the propriety of admissibility ripe for review.  See § 90.104(1)(b), Fla. Stat. (2021) ("If the court has made a definitive ruling on the record admitting . . . evidence, either at or before trial, a party need not renew an objection or offer of proof to preserve a claim of error for appeal.").

installed, multiple leaks were discovered. Construction was halted and remedial efforts, including the installation of a replacement lock bar by CGI, proved unsuccessful.

Epic filed suit in the lower tribunal against NCJD for performing defective stucco work and damaging certain windows in the process. The complaint then proceeded through several different iterations until it reached the operative pleading, a third amended complaint.

In the amended complaint, NCJD remained a defendant, but appellants were added as plaintiffs and negligent installation claims were asserted against R&S. Appellants then moved to add a claim for treble damages against NCJD on the ground it was not properly licensed. That motion was never adjudicated.

Shortly thereafter, Epic voluntarily dismissed its claims against R&S and, along with appellants, filed a second amended complaint removing R&S, leaving NCJD, and adding CGI.[2] CGI moved to dismiss, and the trial court granted the motion without prejudice.

Epic and appellants subsequently filed the operative pleading, a third amended complaint, against NCJD and CGI. CGI filed, but later voluntarily

---

[2] Appellants did not file a first amended complaint, but rather proceeded directly to a second amended complaint.

3

dismissed, a counterclaim against Epic, and the trial court dismissed the claim against NCJD pursuant to a stipulation for settlement. This left only appellants' negligence claim against CGI ripe for adjudication.

Before trial, CGI requested the trial court judicially notice "the pleadings filed by each of the current and former parties to the instant action." Appellants opposed the request and filed two pretrial motions. The first sought to exclude any reference to previous claims, while the second requested to amend the case style to reflect only appellants and CGI as parties. In furtherance of the latter motion, appellants contended that "CGI [was] attempting to keep non-parties on the case style to improperly influence the jury."

The trial court convened a hearing. At the hearing, CGI argued that the prior pleadings constituted admissions by appellants and were relevant to demonstrate that the former defendants were responsible for the claimed damages. The trial judge ruled the previous claims could not be used to demonstrate litigiousness, but CGI would be "permitted to introduce evidence that Epic and [appellants] sued the now dropped defendant[s]."[3]

---

[3] The court, however, excluded evidence of a separate suit filed by appellants against JLU, a subcontractor.

Consistent with this ruling, the trial court granted the motion for judicial notice and denied appellants' pretrial motions.

The court conducted a seven-day jury trial. During the trial, appellants presented evidence that the lock bar CGI initially used with the windows was too short to produce a tight seal, precipitating the later leaks, and that the replacement lock bar installed by CGI was insufficient and unsightly. In furtherance of their theory, appellants established that while CGI was attempting to remedy the window leaks, it issued a document entitled "Engineering Change Notice," which required the installation of a longer lock bar for the particular model of windows installed in appellants' home. CGI did not, however, use the longer bar on appellants' windows or disclose the document until litigation commenced. Further, CGI purportedly experienced a trend in leaking with similar windows at other properties, and a representative indicated that the problems with appellants' windows were "the last straw," prompting the change notice and a different lock bar design.

To counter appellants' claims, CGI asserted that only five of the most exposed windows leaked and its efforts to replace those windows were unreasonably rebuffed. Despite these defenses, two inextricably intertwined themes dominated CGI's case: (1) appellants were seeking the same relief

from CGI they had previously sought to recover from R&S and NCJD; and (2) as demonstrated from the prior pleadings, appellants lacked any veracity.

These themes were developed at the outset of the trial. In opening statement, CGI framed the dispute in the following manner:

> You know, I was thinking about this case last night, probably 2:00 in the morning, and I said how do I explain to these people what this case is about. And it's the triple dip. That's what this case is about. Okay. Triple dip. They're blaming three separate parties for the same damages. CGI now, here. Previously, it was R&S and NCJD. Okay. The triple dip.[4]

CGI next informed the jury the prior pleadings constituted admissions under oath, stating:

> In fact, you're not going to have to believe one of the witnesses in our case[-]in[-]chief to get there. You only have to accept that from the plaintiffs, what they said, under oath in a court filing, what they said in their pleadings. Admitting that it was NCJD.
> . . .
> You can believe them when they say in a court filing that NCJD caused those damages to the windows . . . .
> . . .
> [T]hey stated, admitted, that R&S negligently installed the windows and damaged them by doing so. Again, you're not going to have to believe a single witness from our side. This is what the plaintiffs themselves tell you . . . occurred.

---

[4] After opening statement, appellants renewed their objection to the disputed evidence. The trial court again authorized CGI to reference the prior unsworn pleadings but ruled only the third amended complaint would be formally admitted as evidence.

CGI then used the pleadings as a springboard to support the contention Mr. Hernandez was lying, arguing:

> Mr. Hernandez lied about who caused the damage to the window frames and the glass. It was NCJD that actually caused that damage. No money should be award to CG—from CGI to the plaintiffs for any damage to the frames for the glass. None. We didn't do it.

During the course of the trial, CGI introduced an unredacted copy of the third amended complaint, reflecting claims against the then-settled entity, NCJD, into evidence. It then cross-examined R&S's corporate representative about the negligent installation claims against R&S in the amended complaint.

Similarly, CGI cross-examined Ms. Hernandez regarding the unadjudicated treble damages motion, which asserted NCJD was unlicensed, along with the previous suit against R&S. When Ms. Hernandez responded by indicating her attorney sued R&S in error, CGI suggested that the costs associated with hiring a process server and filing suit belied any such contention.

In closing argument, drawing upon the testimony and exhibits, CGI argued appellants were "liars" committed to concealing the details of the prior litigation and "triple dippers" seeking to recover duplicative damages from

multiple parties.  In doing so, CGI again focused on the previous suits and characterized the prior pleadings as admissions, arguing:

> The lawsuit against NCJD, the stucco contractor, I told you in the open that they were going to, from their own mouths, admit that they sued NCJD for the damage caused to the window frames and the glass, such that they had to be replaced.
>
> . . .
>
> The lawsuit against R&S allege[d] improper installation and damage to the windows.  I mistakenly sued R&S.  I had to file a motion with the Court, that had to wait to be heard in a hearing about a month later, that was granted.  It wasn't dismissed for another 2 months.  They had to accidentally pay $10 to the Court to have R&S served.  It wasn't a mistake.  They thought that at the time.  It's called an admission from a party.  That kind of evidence, in the face of their lies in the Court, is good evidence that you have to pay attention to.
>
> . . .
>
> Do you remember when I told you in opening statement the triple dip?  Remember that, the triple dip?  Okay?  That's what's going on here.
>
> . . .
>
> Is that justice?  Is that something you folks should reward?  Do you reward liars?  No.  You do not, and you shouldn't here.  Especially not here.  Not in this case.

After closing arguments, the jurors were presented with the verdict form.  The caption reflected both Epic and appellants as plaintiffs and CGI and NCJD as defendants.  Following a short deliberation, the jury returned a verdict in favor of CGI.  Subsequent motions for new trial and to set aside the verdict proved futile, and the instant appeal ensued.

## STANDARD OF REVIEW

8

We review a trial court's ruling on the admissibility of evidence under an abuse of discretion standard. Bank of Am., N.A. v. Delgado, 166 So. 3d 857, 860 (Fla. 3d DCA 2015). Such discretion, however, is not unbridled. Instead, it is "limited by the evidence code and applicable case law," and an erroneous interpretation of such authorities is subject to de novo review. Id. (quoting Olesky ex rel. Est. of Olesky v. Stapleton, 123 So. 3d 592, 594 (Fla. 2d DCA 2013)).

**ANALYSIS**

"It has long been established in this state that inconsistent positions taken by a party through the pleadings he [or she] files in an action may not [ordinarily] be used by an opposing party as proof of an issue." Hines v. Trager Const. Co., 188 So. 2d 826, 829 (Fla. 1st DCA 1966); see Straub v. Vill. of Wellington, 941 So. 2d 1269 (Fla. 4th DCA 2006); Brown v. Colonial Penn Ins. Co., 666 So. 2d 226 (Fla. 2d DCA 1995). The reasoning behind this principle is that a complaint or counterclaim drafted by an attorney "is but a tentative outline of a pleader's position." Adams v. Merrill Lynch, Pierce, Fenner & Smith, 392 So. 2d 4, 5 (Fla. 4th DCA 1980); see Chase Home Loans, LLC v. Sosa, 104 So. 3d 1240 (Fla. 3d DCA 2012); Fallon v. City Furniture, Inc., 959 So. 2d 306 (Fla. 3d DCA 2007). While the law recognizes a narrow exception where a pleading may constitute an

9

admission if "the party has manifested an adoption or belief in its truth," absent such a particularized showing, unsworn pleadings and motions cannot be introduced during trial. State Farm Fire & Cas. Co. v. Higgins, 788 So. 2d 992, 1007 (Fla. 4th DCA 2001) (quoting § 90.803(18)(b), Fla. Stat. (2000));[5] see Adams, 392 So. 2d 4; Coggan v. Coggan, 239 So. 2d 17 (Fla. 1970); Harrold v. Schluep, 264 So. 2d 431 (Fla. 4th DCA 1972).

Here, neither the third amended complaint nor the prior iterations of the pleadings were sworn. All were drafted by counsel, and the record is devoid of any particularized showing the pleadings or unadjudicated treble damages motion were anything more than "a tentative outline of the position which [appellants took] before the case [was] fully developed on the facts." Hines, 188 So. 2d at 831. Consequently, formally admitting the third amended complaint into evidence and apprising the jury of the contents of the remaining documents constituted error.

This error was further compounded because the admission of the challenged evidence yielded the inescapable inference the former defendants had settled. It is well-established that Florida law "prohibits the admission at trial of any evidence of settlement or dismissal of a defendant." Holmes v. Area Glass, Inc., 117 So. 3d 492, 494 (Fla. 1st DCA 2013); see §

---

[5] The 2021 version of the statute also contains the quoted language.

768.041(3), Fla. Stat. (2021) ("The fact . . . that any defendant has been dismissed by order of the court shall not be made known to the jury."). This is so "regardless of whether it is presented to the jury through evidence or through some other means." Holmes, 117 So. 3d at 494–95. The law "admits no exceptions, and violation of the prohibition is reversible error." Id. at 494; see Saleeby v. Rocky Elson Const., Inc., 3 So. 3d 1078 (Fla. 2009). That is because knowledge of a settlement with another tortfeasor is "immediately and completely destructive to the possibility of a fair trial between the plaintiff and the defendant," as "it is a practical impossibility to eradicate from the jury's minds the consideration that where there has been a payment there must have been liability." City of Coral Gables v. Jordan, 186 So. 2d 60, 62, 63 (Fla. 3d DCA 1966).

Observing these principles, nearly a decade ago, this court reiterated the adage that although "it may be permissible to point to an 'empty chair,' it is not permissible to point out that the 'empty chair' was once a defendant in the case." Bern v. Camejo, 168 So. 3d 232, 235 (Fla. 3d DCA 2014) (quoting Webb v. Priest, 413 So. 2d 43, 46 (Fla. 3d DCA 1982)). In accord with this authority, we have repeatedly found that the mere inference of settlement is sufficient to warrant a new trial. See id. at 236 ("Defendants made repeated references, in testimony and argument, to the fact that Bern had sued Perez

11

and that Perez was a prior defendant in the case, leading the jury logically and reasonably to conclude Bern had settled her claim against Perez prior to trial."); Webb, 413 So. 2d at 46 ("Though neither the fact of settlement, nor the terms of that agreement were put before the jury, the record shows numerous instances where appellees were permitted to bring to the jury's attention the fact that Jackson Hospital and its employees had been prior defendants.").

This does not, however, end our analysis. We must next examine whether the error was harmless. "To test for harmless error, the beneficiary of the error has the burden to prove that the error complained of did not contribute to the verdict. Alternatively stated, the beneficiary of the error must prove that there is no reasonable possibility that the error contributed to the verdict." Special v. W. Boca Med. Ctr., 160 So. 3d 1251, 1256 (Fla. 2014).

Here, the facts alleged in the pleadings were characterized as admissions. Those purported admissions, in turn, served as the basis for the "lying" and "triple-dipping" themes advanced by the defense in opening statement. Cross-examination was used as a conduit for the introduction of details concerning the prior litigation. The initial themes were again repeated

in closing argument.  At the conclusion of the trial, the jury was presented with a verdict form reflecting a former plaintiff and settled defendant.

The dissemination and discussion of this inadmissible evidence was pervasive, and the corresponding argument by CGI shifted the focus of the trial from the justiciable issue of negligence to whether appellants were "lying" and "triple-dipping," as demonstrated by the prior lawsuits, pleadings, and motion.  Under these circumstances, we cannot disregard the likelihood that the inadmissible evidence "influenced jurors, however subtly, in their determination," that CGI bore no responsibility for the defective windows. White v. Consol. Freightways Corp. of Del., 766 So. 2d 1228, 1233 (Fla. 1st DCA 2000).  Accordingly, the error cannot be deemed harmless, and we reverse and remand for a new trial.

Reversed and remanded.