Bernadette V. **MEADE,** D.O. a/k/a Bernadette V. **Mills**

v.

**FLORIDA INFUSION SERVICES, INC.**

v.

**Keith R. Mills, M.D.**

**No. Civ.A. 00–CV–0821.**

United States District Court, E.D. Pennsylvania.

Nov. 6, 2000.

**500**

John Ehmann, Michele A. Ledo, Eliot G. Long, Montgomery, McCracken, Walker & Rhoads, Philadelphia, PA, for plaintiff.

Peter S. Bejsiuk, Jeffrey A. Grabowski, Capehart & Scatchard, P.A., Mt. Laurel, NJ, for defendant, Florida Infusion Services.

Sigmund J. Fleck, Weir & Partners, LLP, Philadelphia, PA, for defendant, K. Mills.

### MEMORANDUM AND ORDER

JOYNER, District Judge.

This case has been brought before the Court on Motion of the Defendant–Counterclaimant Florida Infusion Services, Inc. for summary judgment on both the Plaintiff's complaint for declaratory judgment and its counterclaim for judgment on the commercial promissory note and guaranty agreement which plaintiff and her husband executed in defendant's favor on August 24, 1999. For the reasons which follow, the motion shall be denied.

### Factual Background

Both Plaintiff, Bernadette Meade and her husband, Third–Party Defendant Keith Mills, are physicians maintaining separate medical practices at 3013 Garrett Road in Drexel Hill, PA. Dr. Mills' apparently concentrates his practice in the treatment of cancer patients, many of whom are indigent. Dr. Mills has been purchasing chemotherapy drugs and other supplies from Defendant Florida Infusion Services, Inc. ("FIS") for the last five years with the result that, as of August of 1999, he owed FIS $266,445.71, $261,763 .36 of which was past due.

According to FIS, as an accommodation to Drs. Mills and Meade, it agreed to convert the amount due as of August 3, 1999 into a loan to be repaid by both of them over a period of 28 months at the rate of $10,444.10 per month. On September 1, 1999, Drs. Mills and Meade executed and delivered to FIS a Commercial Promissory Note and Guaranty Agreement in which they promised to repay, jointly and severally, the sum of $266,445.71 under the above terms. Although Plaintiff and Third–Party Defendant made the required payments in September, October and November, 1999, they have failed to make any payments since that time and Defendant now contends that it is entitled to judgment in its favor as a matter of law in the amount of $253,042.53.

In opposition to the defendant's motion, Plaintiff advances the same argument that she asserts in her complaint for declaratory judgment. Specifically, it is Plaintiff's position that because there was no consideration for her promise and agreement to help pay her husband's pre-existing business debt, the commercial promissory note and guaranty are unenforceable. Thus, Dr. Meade contends, this case presents genuine issues of material fact and summary judgment is inappropriate.

### Standards Governing Summary Judgment Motions

The standards to be applied by the district courts in ruling on motions for summary judgment are set forth in Fed. R.Civ.P. 56. Under subsection (c) of that rule,

.... The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. A summary judgment, interlocutory in character, may be rendered on the issue of liability alone although there is a genuine issue as to the amount of damages.

Pursuant to this rule, a court is compelled to look beyond the bare allegations of the pleadings to determine if they have sufficient factual support to warrant their consideration at trial. *Liberty Lobby, Inc. v. Dow Jones & Co.*, 838 F.2d 1287 (D.C.Cir.1988), *cert. denied,* 488 U.S. 825, 109 S.Ct. 75, 102 L.Ed.2d 51 (1988); *Aries Realty, Inc. v. AGS Columbia Associates*, 751 F.Supp. 444 (S.D.N.Y.1990).

Generally, the party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion and identifying those portions of the pleadings, depositions, answers to interrogatories and admissions on file, together with any affidavits, which it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In considering a summary judgment motion, the court must view the facts in the light most favorable to the non-moving party and all reasonable inferences from the facts must be drawn in favor of that party as well. *U.S. v. Kensington Hospital,* 760 F.Supp. 1120 (E.D.Pa.1991); *Schillachi v. Flying Dutchman Motorcycle Club*, 751 F.Supp. 1169 (E.D.Pa.1990). *See Also: Williams v. Borough of West Chester*, 891 F.2d 458, 460 (3rd Cir.1989); *Tziatzios v. U.S.*, 164 F.R.D. 410, 411, 412 (E.D.Pa.1996).

### Discussion

■ The outcome of this case turns on the language of the promissory note and guarantee and the circumstances under which they were executed. Defendant submits that because there is a choice of law provision in the notes which Plaintiff signed, the law of Florida should be applied in this case.[1] While Plaintiff argues that, "Pennsylvania law would undoubtedly apply to FIS's efforts to enforce its past due obligation," it appears to this Court that we need not necessarily resolve this issue as the law of both states is similar to the extent that it holds that forbearance in the collection of an outstanding account may be sufficient to support the promise to pay a debt of a third person, provided the grant of such delay is of benefit to the promisor, or the one for whom he intervenes. *Koons v. Franklin Trust Co.*, 276 Pa. 377, 380, 120 A. 387, 388 (1923). *See Also: City of South Miami v. Dembinsky*, 423 So.2d 988, 989 (Fla.Dist.Ct.App.1982); *Bara v. Jones*, 400 So.2d 88 (Fla.Dist.Ct. App.1981).

■ Pennsylvania courts, of course, have traditionally held that a choice of law provision in a contract will be upheld as long as the transaction bears a reasonable relationship to the state whose law is governing and where the parties have sufficient contacts with the chosen state. *Wat-*

---

1. In reality, the language of the "Applicable Law" clause of the Note is not all that clear. It reads:

"Borrower agrees that this Note constitutes a contract under the laws of the State of Florida, and shall be enforceable in a Court of competent jurisdiction in Pinellas County, Florida, regardless of where this Note is executed. Any and all Florida documentary stamps will be affixed by and paid by the borrower."

The language in the Guaranty is somewhat more definitive: "This Guaranty shall be governed by, and construed and enforced in accordance with the laws of the State of Florida."

kins v. Kmart Corporation, 1998 WL 355525, 1998 U.S.Dist. LEXIS 9494 (E.D.Pa.1998); Cottman Transmission Systems, Inc. v. Melody, 869 F.Supp. 1180, 1184 (E.D.Pa.1994); Jaskey Finance and Leasing v. Display Data Corp., 564 F.Supp. 160 (E.D.Pa.1983). Since the record in this action contains no evidence as to whether or not the plaintiff has any contacts whatsoever with Florida and as to whether or not this transaction bears a reasonable relationship to Florida, we find that genuine issues of material fact exist which preclude a definitive determination from being made at this time as to which state's law should apply.

■ Moreover, in reviewing the language of the note and the guaranty, we find that neither document specifies what consideration has been given in support. To be sure, the commercial promissory note recites only that:

> "FOR VALUE RECEIVED", receipt of which is hereby acknowledged, the undersigned makers, Dr. Keith Mills, M.D. and Bernadette Meade Mills (the "Borrowers"), **jointly and severally**, promises (sic) to pay to the order of FLORIDA INFUSION SERVICES, INC., a Florida Corporation, (the "Lender"), the principal sum of Two Hundred Sixty Six Thousand, Four Hundred Forty Five and 71/100 DOLLARS ($266,445.71), bearing interest at the rate of 8.00% per year on the unpaid balance from the date of this Note forward, both principal and interest being payable at the office of the Lender at 1053 Progress Court, Palm Harbor, Florida 34683 ... (emphasis in original).

Nowhere in this document is any reference made to the Defendant's agreement to forebear the collection of a debt or to any other consideration to support the agreement of Drs. Meade and Mills to pay the sum stated. Indeed, while it does not appear to be undisputed that Dr. Mills received "value" from FIS or that he is and was obligated to pay the amount claimed, there simply is no evidence on this record as to what "value" Dr. Meade received in exchange for her agreement to become jointly and severally responsible with her husband for the payment of his pre-existing business debt by signing the commercial promissory note.

The language of the guaranty agreement is similarly vague as to what consideration was given by FIS to Dr. Meade in exchange for her agreement to help repay her husband's debt. On this point, the guaranty agreement provides, in pertinent part:

> (B) The Guarantors will be benefitted if Lender makes the aforesaid loan (the "Loan") to Borrower because Guarantors (sic) has an interest, directly or indirectly, in the transaction to be funded with the Loan.

NOW THEREFORE, in consideration of the premises and for other good and valuable considerations, and to induce the Lender to make the Loan, Guarantors does (sic) hereby covenant and agree as follows ...

10. **Guarantors' Representations** In order to induce Lender to make the Loan to Borrower, and knowing that Lender shall rely on such warranties and representation, Guarantors represent and warrant that: (1) Guarantors shall be benefitted if Lender makes the Loan to Borrower; (b) the execution, delivery and performance of this Guaranty does not and shall not contravene any applicable law, not result in a breach of or default under any applicable law, not result in a breach of or default under any other agreement to which Guarantors is (sic) a party or by which Guarantor may be bound or affected; and (c) except as otherwise previously or concurrently disclosed to Lender in writing, there are no suits, actions or proceedings pending or threatened against any administrative board or tribunal or governmental authority, and Guarantors is (sic) not in default under the terms of any order, writ, injunction, judgment,

decree or demand of any court or tribunal or governmental authority.

Here again, there is no mention in the guaranty of a forbearance and no evidence as to what "good and valuable consideration" has been received by Dr. Meade or as to the manner in which she benefitted by the "loan" to her husband. Viewing the plaintiff's allegations as true and viewing the record in this matter in the light most favorable to the plaintiff (as we must because there has been absolutely no evidence provided aside from the promissory note and guaranty documents), we conclude that there are genuine issues of material fact as to exactly what the consideration was supporting these agreements and as to the circumstances under which these documents were executed. For these reasons, the defendant's motion for summary judgment is denied.